Hand, P.J.
This case presents a dispute over insurance coverage for the costs of recovering a vehicle that left the roadway after a single-car collision. At the time of the accident, the vehicle, a 2000 Ford Explorer, was operated by defendant Safety Insurance Company’s (“Safety”) insured, David Raposa (“Raposa”). The parties agree that on August 8, 2009, after the accident in which Raposa’s SUV left the roadway, went over a guardrail, and came to rest at the bottom of a steep incline and on property owned by the Commonwealth, the Massachusetts State police called Gaskell’s Towing (“Gaskell’s”) to assist in removing the vehicle. When Gaskell’s determined that it did not have the necessary equipment to retrieve the Explorer, it called in Big Wheel Truck Sales, Inc. (“Big Wheel”) to recover it. Big WTieel came to the accident scene for an evaluation, noting both the vehicle’s location and the fact that the SUV was “leaking fluids.”[2] Using specialized equipment, Big Wheel recovered the vehicle.[3]
At the time of the accident, Raposa’s coverage with Safety under the standard Massachusetts automobile insurance policy, 2008 edition (“Massachusetts Auto Policy”), included, pursuant to Part 4 of the Massachusetts Auto Policy, coverage for “Damage to Someone Else’s Property” (“Part 4” or “Property Damage Coverage”). Although Safety offered optional coverage for ‘Towing and Labor” under Part 11 of the Massachusetts Auto Policy, Raposa had not purchased that coverage.[4]
*122 Big Wheel sent its invoice for $5,470.00 to Gaskell’s Towing for Gaskell to include in its billing for the removal of Raposa’s vehicle. Gaskell transmitted the bill to Raposa; Big Wheel also sent its bill directly to both Raposa and Safety. Safety declined to pay Big Wheel’s invoice. Big Wheel made a demand on Safety for payment of the invoice under Raposa’s Property Damage Coverage. Reasoning that Big Wheel itself did not sustain any damage as a result of Raposa’s accident, and that “there was no environmental issue that was caused by or arose from this accident” requiring hazardous waste cleanup, Safety maintained its position that Big Wheel’s charges were not covered under Raposa’s policy and declined to pay Big Wheel’s invoice. Throughout the litigation, Safety conceded the accuracy of Big Wheel’s charges for its services in connection with these events, and the charges’ propriety.
Safety having declined its demands for payment of its invoice for services related to Raposa’s accident, Big Wheel brought suit against both Raposa and Safety for breaches of contract and in quantum meruit, and against Safety for recovery under G.L.c. 93A, §11, based on unfair insurance settlement practices. Big Wheel’s claims against Safety were stayed until the resolution of its claims against Raposa. In 2012, with the agreement of both Raposa and Safety, Big Wheel agreed that it would seek to collect on the judgment only under Raposa’s insurance coverage, and not against Raposa. Judgment then entered against Raposa for the $5,470.00 Big Wheel charged for recovery of Raposa’s SUV, and the stay of Big Wheel’s claims against Safety was lifted. Safety’s view that Big Wheel’s services were not covered under the policy was unchanged, and it continued to decline to pay Big Wheel’s bill for that work.
Safety counterclaimed against Big Wheel for declaratory judgment on the coverage question; both parties moved for summary judgment. In April, 2014, the trial court allowed Big Wheel’s motion for summary judgment, awarding it damages of $5,400.00 on the breach of contract claim and treble damages, plus attorney’s fees, on the G.L.c. *123 93A claim.[5] The court denied Safety’s motion for summary judgment. The trial court denied Safety’s subsequent motion to amend the judgment with respect to attorney’s fees.
Safely appeals from the allowance of Big Wheel’s motion for summary judgment, and from the denial of its motion to amend the judgment.
Rule 56 standard. It is well settled that summary judgment is appropriate only in the absence of any genuine issue of material fact and where, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P., Rule 56(c). See Burns v. McDonald’s Corp., 2010 Mass. App. Div. 205, 208, citing Coviello v. Richardson, 76 Mass. App. Ct. 603, 607, and Nelson v. Salem State College, 446 Mass. 525, 530 (2006). We review a trial court’s ruling on such a motion de novo, “consider [ing] the record and the legal principles involved without deference to the motion judge’s reasoning.” Donovan v. Mahoney, 2008 Mass. App. Div. 41, 42, quoting Clean Harbors, Inc. v.John Hancock Life Ins. Co., 64 Mass. App. Ct. 347, 357 n.9 (2005). See Nova Assignments, Inc. v. Kunian, 77 Mass. App. Ct. 34, 35 (2010) (de novo standard of review of allowance of motion for summary judgment). “An order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law.” Allmerica Fin. Corp. v. Certain Underwriters at Lloyd’s, London, 449 Mass. 621, 628 (2007), quoting Commonwealth v. One 1987 Mercury Cougar Auto., 413 Mass. 534, 536 (1992).
Safety’s liability under Raposa’s Property Damage Coverage. The parties are generally in agreement as to the facts of this case. Even if that were not so, the interpretation of a contract, including an insurance contract, is generally a matter of law. See Ruggerio Ambulance Serv., Inc. v. National Grange Ins. Co., 430 Mass. 794, 797 (2000), citing Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). “Where the terms of the policy are ‘plain and free from ambiguity,’ Barnstable County Mut. Fire Ins. Co. v. Lally, 374 Mass. 602, 605 (1978), they are not to be construed strictly against the insurer, but rather, they are to be construed in ‘their usual and ordinary sense.’ Id.”[6] Main v. Cambridge Mut. Fire Ins. Co., 1995 Mass. App. Div. 114, 116. See Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997). See also Massachusetts Insurers Insolvency Fund v. Premier Ins. Co. of Mass., 439 Mass. 318, 321 (2003) (as Commissioner of Insurance, and not the automobile insurer, is responsible for wording of Massachusetts policy, ambiguities in wording of Massachusetts automobile insurance policy are not presumptively construed against insurer). In the context of an insurance policy, “we ‘consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.’” McGregor v. *124 Allamerica Ins. Co., 449 Mass. 400, 402 (2007), quoting Hazen Paper Co. v. United States Fid & Guar. Co., 407 Mass. 689, 700 (1990).
Tbe dispute here centers on the wording of the Property Damage Coverage provision at Part 4 of Raposa’s policy with Safely:
Under this Part, we will pay damages to someone else whose auto or other property is damaged in an accident. The damages we will pay are the amounts that person is legally entitled to collect for property damage through a court judgment or settlement.... Damages include any applicable sales tax and the costs resulting from the loss of use of the property.
We find this language to be clear and unambiguous, and to limit the pool of potential claimants to persons or entities, other than the policy’s named insured, “whose auto or other property is damaged in an accident.” This reading renders Part 4 inapplicable to Big Wheel: although not the insured under the policy, and so qualifying as “someone else,” Big Wheel makes claims for the costs of its services, not to damage to its own property. The second sentence of Part 4, read in context, continues to limit the universe of claimants to “that person” “whose auto or other property is damaged in an accident,” and gives “that person” the ability to collect for amounts to which “that person” is entitled to collect through litigation or settlement. Again, Big Wheel is not, in this case, “that person,” and so is not eligible for payment under Part 4 of this policy. Despite the arguments by both parties, the issue, in our view, is not whether the presence of Raposa’s SUV at the bottom of the embankment resulted in actionable loss of use of the property on which it sat, or whether any such loss of use would amount to “property damage” under the policy, but instead, whether Big Wheel qualifies as a claimant under this section of the Massachusetts Auto Policy. We find that it does not. Accordingly, we vacate the summary judgment issued in favor of Big Wheel on its breach of contract claim, and order that summary judgment enter in favor of Safety on its counterclaim against Big Wheel for declaratory judgment[7]
In light of our conclusion that Big Wheel was not an entity to whom Safety was obligated, in this case, to make payment under Part 4, and given the fact that this position was one of the bases on which Safety had denied coverage, the court’s ruling in favor of Big Wheel on its G.L.c. 93A claim against Safety must also be reversed. ‘When coverage has been correctly denied, as in this case, no violation of the Massachusetts statutes proscribing unfair or deceptive trade practices may be found. See Jet Line Servs., Inc. v. American Employers Ins. Co., 404 Mass. 706, 717 (1989); Timpson v. Transamerica Ins. Co., 41 Mass. App. Ct. [344,] 353 [(1996)]; Spurlin v. Merchants Ins. Co., 866 F. Supp. 57, 62 (D. Mass. 1994).” Transamerica Ins. Co. v. KMS Patriots, L.P., 52 Mass. App. Ct. 189, 197 (2001). As the court’s award of attorney’s fees depended solely on Big Wheel’s success on it G.L.c. 93A claim, the reversal of the judgment on the G.L.c. 93A claim necessarily requires that we vacate the award of those fees.
For the foregoing reasons, we reverse the trial court’s summary judgment in favor of Big Wheel on its breach of contract claim against Safety and order summary judg *125 ment to enter in Safety’s favor on Safety’s counterclaim for declaratoiy judgment. The judgment in Big Wheel’s favor on its G.L.c. 93A claim is vacated, as is the award to it of attorney’s fees pursuant to that statute.

 The record does not include any detail about the nature or amounts of the leaking fluid, other than an indication that Big Wheel team members “were hit with the strong smell of gas, oil, and antifreeze” when they arrived at the accident scene. The record does not provide any indication of whether or where any escaped fluid collected.

 The agreed facts included in the record before us state that Big Wheel “remediat-ed” the area in which the SUV had come to rest after the accident. There is no other indication in the record that Big Wheel did anything other than remove Raposa’s vehicle from the area; on the record before us, Big Wheel did not charge for any “remediation” other than that removal.

 Part 4 of the Massachusetts Auto Policy sets out the limits of property damage coverage and includes the following language:
*122 Under this Part, we will pay damages to someone else whose auto or other property is damaged in an accident. The damages we will pay are the amounts that person is legally entitled to collect for property damage through a court judgment or settlement. ... Damages include any applicable sales tax and the costs resulting from the loss of use of the damaged property.
As to ‘Towing and Labor” coverage, Part 11 of the Massachusetts Auto Policy states:
Under this Part, we will pay up to the limit shown on your Coverage Selections Page for towing and labor costs incurred each time your auto is disabled. We will pay only for labor done at the scene to the extent that the labor was needed to get your auto going. We will not pay for the cost of repair parts.

 The judgment against Safety totaled $42,800.64. Big Wheel’s claim in quantum meruit against Safety was dismissed by agreement of the parties.

 “Ambiguity exists where the policy is ‘susceptible of at least two rational interpretations.’ Liquor Liability Joint Underwriting Association of Massachusetts v. Hermitage Ins. Co., 419 Mass. 316, 322 (1995).” Main v. Cambridge Mut. Fire Ins. Co., 1995 Mass. App. Div. 114, 116. Mere disagreement between the parties about the meaning of a contractual term does not create “ambiguity” for these purposes. Id, citing Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 464 (1995).

 The fact that Safety paid another vendor directly for repairs to the guardrails damaged in the course of the collision and presumably owned by the Commonwealth is not significant to our analysis.